**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JIN FENG and YANG WANG (a/k/a HELEN WANG), Plaintiffs, v. CHENCHEN FENG, Defendant. | Case No. 7:25-CV-02396-NSR |

**CHENCHEN FENG'S ANSWER TO COMPLAINT**

Defendant Chenchen Feng ("Chenchen") hereby answers the complaint of plaintiffs Jin Feng ("Jin") and Yang Wang (also known as Helen Wang) ("Helen"), and sets forth her affirmative defenses thereto. To the extent that the headings or other non-numbered statements in the complaint contain any allegations, Chenchen denies those allegations. This pleading is based upon Chenchen's present knowledge as to her own conduct, and upon information and belief as to the conduct of others.

**NATURE OF THE ACTION**

**PARAGRAPH 1:**

Jin and Helen Feng have dedicated their entire lives to their children. In 1994, when they were a young couple, Jin and Helen immigrated from China with only $750 to their name. At that time, Chenchen was only nine months old, and Jin and Helen were forced to leave her behind with Helen's father in China so they could work to build a home here in the United States. Jin and Helen spent years toiling away at odd jobs, including delivering newspapers on the weekends, and worked every single day of the week to save up money to build a foundation for their family. In 1998, Jin and Helen brought Chenchen over to live with them in the United States, where they raised Chenchen and, later, her younger sister Judy.

**RESPONSE TO PARAGRAPH 1:**

Chenchen admits that: in 1994, when she was nine months old, Jin and Helen immigrated to the Unites States from China, leaving her behind in China with her paternal grandfather; and Jin and Helen brought Chenchen from China to live with them in the United States, where they raised Chenchen and her younger sister, Judy. Chenchen denies that Jin and Helen have dedicated their entire lives to their children. Chenchen lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 1.

**PARAGRAPH 2:**

Chenchen excelled in school. Although Jin and Helen felt it was their parental duty to pay for their daughters' undergraduate education, they did not have enough money to also pay for their daughters' graduate degrees.

**RESPONSE TO PARAGRAPH 2:**

Chenchen admits that she excelled at school. Chenchen lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 2.

**PARAGRAPH 3:**

When Chenchen decided to attend medical school, Jin and Helen made an agreement with her. Jin and Helen would refinance their home and take loans from other family members at a lower interest rate than that charged for school loans on the condition that Chenchen repay their loan once she became an attending physician.

**RESPONSE TO PARAGRAPH 3:**

Chenchen denies the allegations in Paragraph 3.

**PARAGRAPH 4:**

Chenchen promised to repay the loan as agreed and, relying on that promise, Jin and Helen took on significant debt to help Chenchen with her medical school tuition and living expenses.

**RESPONSE TO PARAGRAPH 4:**

Chenchen denies the allegations in Paragraph 4.

**PARAGRAPH 5:**

Initially, Chenchen was grateful for her parents' sacrifice and support. She repeatedly reaffirmed her obligation to repay the loan to Jin and Helen and promised to pay for Helen's health insurance until she qualified for Medicare. She also promised to take them on vacation and buy them luxury items like a new car and designer handbags that Jin and Helen would never dream of owning because they always put away their earnings towards their children.

**RESPONSE TO PARAGRAPH 5:**

Chenchen admits that she was grateful for her parents' sacrifice and support. Chenchen denies the remaining allegations in Paragraph 5.

**PARAGRAPH 6:**

Chenchen's attitude changed after she got married and secured a position as an attending anesthesiologist at White Plains Hospital making over half a million dollars a year.

**RESPONSE TO PARAGRAPH 6:**

Chenchen denies the allegations in Paragraph 6.

**PARAGRAPH 7:**

On May 28, 2024, after her parents cared for her for a month following the birth of her daughter, Chenchen took the position for the first time that she need not repay her parents' loan because nothing was in writing and that the loan was a gift. In other words, having received the benefit of her parents' loan that enabled her to get a medical degree, Chenchen decided that she wanted to keep her earnings for herself.

**RESPONSE TO PARAGRAPH 7:**

Chenchen admits that she stayed with her parents for four weeks following the birth of her daughter. Chenchen denies the remaining allegations in Paragraph 7.

**PARAGRAPH 8:**

Chenchen's breach has left her parents (and others) in a precarious financial situation. Jin and Helen used their hard-earned cash to help their daughters get opportunities they could only dream of, and they do not have sufficient savings to cover their own retirement.

**RESPONSE TO PARAGRAPH 8:**

Chenchen denies the allegations in Paragraph 8.

**PARAGRAPH 9:**

Making matters worse, Helen's mother and father have been ill, and Helen has been traveling to China to help care for her ailing and elderly parents. Chenchen, on the other hand, is well-aware of her grandparents' poor health, and yet, exhibits very little care or worry even though Helen's father, Chenchen's grandfather, raised her for the first four years of her life in China when Jin and Helen were struggling to build a home in the United States. Indeed, Chenchen has refused to contribute to her grandparents' healthcare costs even after her grandfather was diagnosed with Stage 4 lung cancer and underwent hip replacement surgery.

**RESPONSE TO PARAGRAPH 9:**

Chenchen admits that Helen's mother and father have been ill, Helen has been traveling to China to help care for them, and Helen's father (with help from others) raised her for the first four years of her life in China. Chenchen denies the remaining allegations in Paragraph 9.

**PARAGRAPH 10:**

While Chenchen reaps the benefits of Plaintiffs' decades of sacrifice, she has left her parents highly vulnerable, desperate, and heartbroken as they begin what should be their golden years. Her actions are not only a selfish and disgraceful betrayal of her familial duty, but they constitute a breach of an enforceable loan agreement. Alternatively, Chenchen should be held liable to repay her parents under the equitable theories of unjust enrichment and promissory estoppel.

**RESPONSE TO PARAGRAPH 10:**

The last two sentences of Paragraph 10 constitute Jin and Helen's legal conclusions, to which no response is required. To the extent a response is required, Chenchen denies the allegations in the last two sentences of Paragraph 10. Chenchen denies the remaining allegations in Paragraph 10.

## THE PARTIES

**PARAGRAPH 11:**

Plaintiff Jin Feng is an individual who is a citizen of the State of Connecticut. Jin Feng is married to Yang Wang a/k/a Helen Wang, and he is Chenchen Feng's father.

**RESPONSE TO PARAGRAPH 11:**

Chenchen admits the allegations in Paragraph 11.

**PARAGRAPH 12:**

Plaintiff Yang Wang a/k/a Helen Wang is an individual who is a citizen of the State of Connecticut. Helen Wang is married to Jin Feng, and she is Chenchen Feng's mother.

**RESPONSE TO PARAGRAPH 12:**

Chenchen admits the allegations in Paragraph 12.

**PARAGRAPH 13:**

Chenchen Feng is an individual who is a citizen of the State of New York who resides in Rye, New York. She is Jin Feng and Helen Wang's daughter.

**RESPONSE TO PARAGRAPH 13:**

Chenchen admits the allegations in Paragraph 13.

## JURISDICTION AND VENUE

**PARAGRAPH 14:**

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because Plaintiffs are citizens of the State of Connecticut and Chenchen is a citizen of the State of New York and the amount in controversy exceeds the sum or value of $75,000.

**RESPONSE TO PARAGRAPH 14:**

The allegations in Paragraph 14 constitute Jin and Helen's legal conclusions, to which no response is required. To the extent a response is required, Chenchen admits that this Court has jurisdiction over this action.

**PARAGRAPH 15:**

The Court has personal jurisdiction over Chenchen because she is an individual who is domiciled in New York.

**RESPONSE TO PARAGRAPH 15:**

The allegations in Paragraph 15 constitute Jin and Helen's legal conclusions, to which no response is required. To the extent a response is required, Chenchen admits that this Court has personal jurisdiction over her in this action.

**PARAGRAPH 16:**

Venue is proper in this judicial district because Chenchen resides in this judicial district, a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and Chenchen is subject to the Court's personal jurisdiction in this judicial district with respect to this action.

**RESPONSE TO PARAGRAPH 16:**

The allegations in Paragraph 16 constitute Jin and Helen's legal conclusions, to which no response is required. To the extent a response is required, Chenchen admits that venue is proper in this district.

**FACTUAL ALLEGATIONS**

**PARAGRAPH 17:**

Jin and Helen immigrated to this country from Nanjing, China in or around June 1994 seeking to build a better life for themselves and, far more importantly, for their family. They arrived with four suitcases and $750 to their name.

**RESPONSE TO PARAGRAPH 17:**

Chenchen admits that her parents immigrated to the United States in or around June 1994. Chenchen lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 17.

**PARAGRAPH 18:**

Jin secured a position as a researcher at the University of Wisconsin making $19,600 per year while Helen worked numerous part-time jobs making minimum wage (which was around five dollars per hour at that time), including caring for seniors, cleaning lab equipment, and waiting tables. Jin and Helen also delivered newspapers on the weekend to make ends meet.

**RESPONSE TO PARAGRAPH 18:**

Chenchen lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 18.

**PARAGRAPH 19:**

Their daughter Chenchen had been born the year before but, due to immense financial pressure, Jin and Helen were forced to leave Chenchen behind in Nanjing with Helen's father.

**RESPONSE TO PARAGRAPH 19:**

Chenchen admits that she was born in 1993 and that Jin and Helen left her behind in China with Helen's father. Chenchen lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 19.

**PARAGRAPH 20:**

Helen's father cared for Chenchen while Jin and Helen worked low wage jobs and slowly built a life for their family.

**RESPONSE TO PARAGRAPH 20:**

Chenchen admits that Helen's father (with help from others) cared for her. Chenchen lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 20.

**PARAGRAPH 21:**

Jin and Helen were devastated to leave their nine-month-old daughter behind but knew that it was the best decision for her future. Thankfully, at one point, Chenchen was able to visit Jin and Helen in Wisconsin for three months before returning to China.

**RESPONSE TO PARAGRAPH 21:**

Chenchen admits that at one point, she visited Jin and Helen in Wisconsin before returning to China. Chenchen lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 21.

**PARAGRAPH 22:**

In 1995, Jin and Helen welcomed their second daughter Judy but, sadly, due to continuing financial pressure, were forced to send her to Shanghai to be raised by Jin's family while Jin and Helen continued to establish a life in America.

**RESPONSE TO PARAGRAPH 22:**

Chenchen admits that her sister Judy was born in 1995, and that Judy was sent to China to be raised by Jin's family. Chenchen lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 22.

**PARAGRAPH 23:**

In 1996, Jin and Helen moved to New York City where Helen found a job and Jin enrolled in a master's program for computer science because he believed it would offer him better job opportunities in the future.

**RESPONSE TO PARAGRAPH 23:**

Chenchen admits that Jin and Helen moved to New York City. Chenchen lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 23.

**PARAGRAPH 24:**

Those first years in the United States were the most difficult time in Jin and Helen's life. Jin spoke very little English, their income was meager, and they rarely had a day off from work. Jin worked in the lab on Christmas Eve and Helen did not take a single day off for the first three years they lived in America.

**RESPONSE TO PARAGRAPH 24:**

Chenchen lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 24.

**PARAGRAPH 25:**

But they persevered and both earned master's degrees and secured green cards.

**RESPONSE TO PARAGRAPH 25:**

Chenchen admits that Jin and Helen earned master's degrees and secured green cards. Chenchen lacks sufficient knowledge and information to either admit or deny any remaining allegations in Paragraph 25.

**PARAGRAPH 26:**

By 1998, Jin and Helen had secured full-time jobs, and they rented a small apartment in Flushing, Queens.

**RESPONSE TO PARAGRAPH 26:**

Chenchen lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 26.

**PARAGRAPH 27:**

By then, to their immense joy, Jin and Helen had saved enough money to bring Chenchen over from China shortly before her fifth birthday.

**RESPONSE TO PARAGRAPH 27:**

Chenchen admits that Jin and Helen brought her over from China. Chenchen lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 27.

**PARAGRAPH 28:**

In January 2000, Jin, Helen, and Chenchen moved to Westport, Connecticut because the schools would provide a better education for their daughters. Judy joined them that same year and their family was finally reunited.

**RESPONSE TO PARAGRAPH 28:**

Chenchen admits that the parties moved to Westport, Connecticut in or around January 2000, and that Judy joined them that same year. Chenchen lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 28.

**PARAGRAPH 29:**

Jin and Helen could only afford a downpayment on the Westport home because, in 1996, while shopping on her lunch break for Christmas presents to send to Chenchen in China, Helen had been struck by bicycle resulting in the loss of two front teeth, and she later received a settlement.

**RESPONSE TO PARAGRAPH 29:**

Chenchen lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 29.

**PARAGRAPH 30:**

Jin and Helen loved their daughters. Everything Jin and Helen did was motivated by their desire to give them the best possible life. Chenchen and Judy were their parents' entire world.

**RESPONSE TO PARAGRAPH 30:**

Chenchen admits that Jin and Helen loved their daughters. Chenchen lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 30.

**PARAGRAPH 31:**

Over the years, Jin and Helen lived an extremely modest life and saved most of their earnings in an education fund to pay for their daughters' undergraduate education.

**RESPONSE TO PARAGRAPH 31:**

Chenchen lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 31.

**PARAGRAPH 32:**

Chenchen always excelled in school. She graduated high school with honors and got a perfect score on her SATs. As a result of her academic performance, Chenchen received multiple opportunities for her undergraduate studies, including a full ride scholarship at the University of Connecticut, a partial scholarship at the University of Chicago, and a small scholarship at Duke University.

**RESPONSE TO PARAGRAPH 32:**

Chenchen admits that she excelled in school, graduated high school with honors, and received multiple opportunities for her undergraduate studies, including partial scholarships at the University of Chicago and Duke University. Chenchen denies the remaining allegations in Paragraph 32.

**PARAGRAPH 33:**

Jin and Helen allowed Chenchen to choose where she attended and agreed to pay her tuition because they felt it was their duty as parents. Chenchen chose to attend Duke University despite the smaller scholarship.

**RESPONSE TO PARAGRAPH 33:**

Chenchen admits that she attended Duke University, and that Jin and Helen agreed to pay her tuition. Chenchen lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 33.

**PARAGRAPH 34:**

Judy, Chenchen's younger sister, later followed Chenchen to Duke University.

**RESPONSE TO PARAGRAPH 34:**

Chenchen admits that Judy attended Duke University. Chenchen lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 34.

**PARAGRAPH 35:**

Jin and Helen were overjoyed at their daughters' opportunities, and they paid a total cost of approximately $400,000 for their undergraduate studies.

**RESPONSE TO PARAGRAPH 35:**

Chenchen lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 35.

**PARAGRAPH 36:**

Overall, Jin and Helen felt immense satisfaction that their move to a new country followed by decades of sacrifice had finally paid off and provided their daughters with opportunities they had never had.

**RESPONSE TO PARAGRAPH 36:**

Chenchen lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 36.

**PARAGRAPH 37:**

Chenchen and Judy both expressed their appreciation for Jin and Helen's sacrifice and promised to take care of their parents when they started earning salaries.

**RESPONSE TO PARAGRAPH 37:**

Chenchen denies the allegations in paragraph 37.

**PARAGRAPH 38:**

Although Jin and Helen felt it was their obligation to pay for their daughters' undergraduate education, they could not afford to also pay for graduate school. Jin and Helen repeatedly discussed this financial limitation with their daughters.

**RESPONSE TO PARAGRAPH 38:**

Chenchen denies that Jin and Helen discussed with her the alleged financial limitation referenced in Paragraph 38. Chenchen lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 38.

**PARAGRAPH 39:**

Jin and Helen also did not want to treat one daughter more favorably than the other. At one point, it became clear that Judy no longer wished to attend graduate school. Jin and Helen believed

that it would be unfair to pay for Chenchen's graduate studies (even if they could afford it) when Judy would not be getting the same benefit.

**RESPONSE TO PARAGRAPH 39:**

Chenchen denies the allegations in the first sentence of Paragraph 39. Chenchen lacks sufficient knowledge and information to either admit or deny the remaining allegations in Paragraph 39.

**PARAGRAPH 40:**

In March 2016, Chenchen received an offer to attend Tulane School of Medicine in New Orleans and raised the issue of medical school tuition and living expenses with her parents.

**RESPONSE TO PARAGRAPH 40:**

Chenchen admits that she received an offer to attend Tulane School of Medicine in New Orleans. Chenchen denies the remaining allegations in Paragraph 40.

**PARAGRAPH 41:**

At that time, the interest rate for student loans was more than 6 percent whereas mortgage interest rates were less than 3 percent.

**RESPONSE TO PARAGRAPH 41:**

Chenchen lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 41.

**PARAGRAPH 42:**

Jin and Helen could not afford to gift Chenchen the expense of graduate school, particularly right after paying for Chenchen *and* Judy's undergraduate tuitions at Duke University.

**RESPONSE TO PARAGRAPH 42:**

Chenchen lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 42.

**PARAGRAPH 43:**

At that time, Helen worked as a librarian and Jin worked for a non-profit college. They simply did not have the funds to cover graduate school tuition, too.

**RESPONSE TO PARAGRAPH 43:**

Chenchen admits that in March 2016, Helen worked as a librarian and Jin worked for a non-profit college. Chenchen lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 43.

**PARAGRAPH 44:**

Although Jin and Helen could not afford to pay for Chenchen's medical school tuition, they wanted to help her to incur the least amount of debt possible.

**RESPONSE TO PARAGRAPH 44:**

Chenchen lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 44.

**PARAGRAPH 45:**

Accordingly, in May 2016, Plaintiffs and Chenchen entered into a binding oral agreement.

**RESPONSE TO PARAGRAPH 45:**

The allegations in Paragraph 45 constitute Jin and Helen's legal conclusions, to which no response is required. To the extent a response is required, Chenchen denies the allegations in Paragraph 45.

**PARAGRAPH 46:**

Jin and Helen offered to loan Chenchen the cost of her medical school tuition and living expenses in exchange for Chenchen's agreement to repay that loan when she became an attending physician.

**RESPONSE TO PARAGRAPH 46:**

Chenchen denies the allegations in Paragraph 46.

**PARAGRAPH 47:**

Chenchen agreed to repay Jin and Helen the cost of her medical school tuition and living expenses so that she would not need to take out student loans at the higher interest rate.

**RESPONSE TO PARAGRAPH 47:**

Chenchen denies the allegations in Paragraph 47.

**PARAGRAPH 48:**

Relying upon Chenchen's representations, Jin and Helen agreed to loan her the money and Chenchen agreed that her repayments would begin when she became an attending physician after completing her residency program (the "Loan Agreement").

**RESPONSE TO PARAGRAPH 48:**

Chenchen denies the allegations in Paragraph 48.

**PARAGRAPH 49:**

This conversation took place in person at Jin and Helen's family home in Westport, Connecticut in or around May 2016.

**RESPONSE TO PARAGRAPH 49:**

Chenchen denies the allegations in Paragraph 49.

**PARAGRAPH 50:**

Following that conversation, in reliance upon Chenchen's promise to repay the loan, Jin and Helen obtained $320,000 by refinancing their mortgage on their family home that was charged at an interest rate of 2.875%.

**RESPONSE TO PARAGRAPH 50:**

Chenchen denies the allegations in Paragraph 50.

**PARAGRAPH 51:**

Also in reliance on Chenchen's promise, Jin and Helen borrowed another $200,000 from Helen's sister Aya at an interest rate of 2%.

**RESPONSE TO PARAGRAPH 51:**

Chenchen denies the allegations in Paragraph 51.

**PARAGRAPH 52:**

Also in reliance on Chenchen's promise, Jin and Helen stopped contributing money to their retirement fund and, instead, loaned that money to Chenchen to cover her medical school tuition and living expenses.

**RESPONSE TO PARAGRAPH 52:**

Chenchen lacks sufficient knowledge and information to either admit or deny the allegation that Jin and Helen stopped contributing money to their retirement fund. Chenchen denies the remaining allegations in Paragraph 52.

**PARAGRAPH 53:**

Pursuant to the terms of the Loan Agreement, between 2016 and 2020, Jin and Helen loaned Chenchen a total of $437,233 to cover her tuition and living expenses while she attended medical school.

**RESPONSE TO PARAGRAPH 53:**

Chenchen denies the allegations in Paragraph 53.

**PARAGRAPH 54:**

Chenchen was at all times fully aware that Jin and Helen relied upon her representation that she would repay the loan.

**RESPONSE TO PARAGRAPH 54:**

Chenchen denies the allegations in Paragraph 54.

**PARAGRAPH 55:**

For several reasons, Chenchen knew at all times that the loan extended by her parents was not a gift. *First*, Chenchen knew that Jin and Helen could not afford to give Chenchen that amount of money; Jin and Helen borrowed against their home and also borrowed funds from Helen's sister. *Second*, Chenchen knew that it would have been unfair for Jin and Helen to give one daughter nearly half a million dollars without giving their other daughter the same amount and there was no question that Chenchen was aware Plaintiffs could not afford to gift her and Judy

nearly one million dollars, particularly when she knew they did not put away enough funds for their own retirement.

**RESPONSE TO PARAGRAPH 55:**

Chenchen denies the allegations in Paragraph 55.

**PARAGRAPH 56:**

Using the loan from Jin and Helen, Chenchen was able to attend Tulane University School of Medicine in New Orleans beginning in 2016. She graduated as a Doctor of Medicine in April 2020.

**RESPONSE TO PARAGRAPH 56:**

Chenchen admits that she attended Tulane University School of Medicine beginning in 2016 and graduated as a Doctor of Medicine in 2020. Chenchen denies the remaining allegations in Paragraph 56.

**PARAGRAPH 57:**

In or around July 2020, Chenchen began her residency in anesthesiology at Mount Sinai Hospital in New York.

**RESPONSE TO PARAGRAPH 57:**

Chenchen admits the allegations in Paragraph 57.

**PARAGRAPH 58:**

Consistent with the terms of the Loan Agreement, Jin and Helen did not require Chenchen to repay her loan while she earned a modest resident's salary. To make sure she was well taken care of, they would often drive to New York City to bring her food so she would eat well while working long hours.

**RESPONSE TO PARAGRAPH 58:**

Chenchen admits that, while she was a resident, Jin and Helen sometimes drove to New York City and brought her food. Chenchen denies the remaining allegations in Paragraph 58.

**PARAGRAPH 59:**

Helen and Jin continued to live a modest life and paid off their mortgage and the loan from Helen's sister in 2022.

**RESPONSE TO PARAGRAPH 59:**

Chenchen lacks sufficient knowledge and information to either admit or deny the allegations that Jin and Helen paid off their alleged mortgage and alleged loan from Helen's sister in 2022. Chenchen denies the remaining allegations in Paragraph 59.

**PARAGRAPH 60:**

In or around October 2021, Chenchen's boyfriend (now husband), Andrew Li, visited Jin in Westport, Connecticut to ask for Chenchen's hand in marriage. During that visit, Jin informed Andrew of the Loan Agreement and Andrew acknowledged that Chenchen would repay the loan as agreed when she became an attending anesthesiologist.

**RESPONSE TO PARAGRAPH 60:**

Chenchen admits the allegations in the first sentence of Paragraph 60. Chenchen denies the remaining allegations in Paragraph 60.

**PARAGRAPH 61:**

Chenchen told Judy that after Andrew had that conversation with Jin, he asked Chenchen to sign a prenuptial agreement, further indicating that Chenchen and Andrew were fully aware that the loan was Chenchen's financial obligation and not a gift.

**RESPONSE TO PARAGRAPH 61:**

Chenchen admits telling Judy that she and Andrew mutually agreed to sign a prenuptial agreement. Chenchen denies the remaining allegations in Paragraph 61.

**PARAGRAPH 62:**

Prior to her marriage to Andrew, Jin also reminded Chenchen of her obligations under the Loan Agreement and Chenchen agreed.

**RESPONSE TO PARAGRAPH 62:**

Chenchen denies the allegations in Paragraph 62.

**PARAGRAPH 63:**

Chenchen graduated from her residency program in May 2024 and secured a prestigious position as an attending anesthesiologist at White Plains Hospital beginning September 2024. Her first-year salary was $500,000 plus a $100,000 signing bonus intended to help young physicians pay off their medical school loans.

**RESPONSE TO PARAGRAPH 63:**

Chenchen admits that she graduated from her residency program, secured a position as an attending anesthesiologist at White Plains Hospital beginning September 2024, and that her first-year salary is $500,000. Chenchen denies the remaining allegations in Paragraph 63.

**PARAGRAPH 64:**

In or around April 2024, Chenchen gave birth to a daughter. Jin and Helen cared for Chenchen and their granddaughter at their home in Westport for the first month after their granddaughter's birth. In Chinese tradition called "Zuo Yue Zi," after a woman gives birth, she spends the first month at home in postpartum confinement to allow her body to rest and eat nourishing foods. Jin and Helen had also brought food down to New York City at least twice a month to ensure that Chenchen had nutritious food to eat while she was pregnant.

**RESPONSE TO PARAGRAPH 64:**

Chenchen admits that she gave birth to her daughter on April 28, 2024 and spent the first four weeks after giving birth in Jin and Helen's home, consistent with the Chinese tradition called "Zuo Yue Zi." Chenchen denies the remaining allegations in Paragraph 64.

**PARAGRAPH 65:**

On or around May 26, 2024, when "Zuo Yue Zi" was about to end, Jin and Helen raised the issue of the loan with Chenchen while they were at their home in Westport. They told her that, as agreed, she would need to start repaying the loan when she started working as a full-time attending anesthesiologist at White Plains Hospital that fall.

**RESPONSE TO PARAGRAPH 65:**

Chenchen denies the allegations in Paragraph 65.

**PARAGRAPH 66:**

Chenchen acknowledged her obligations under the Loan Agreement and agreed to start paying back the loan in October 2024 when she expected to receive her signing bonus of $100,000 from White Plains Hospital.

**RESPONSE TO PARAGRAPH 66:**

Chenchen denies the allegations in Paragraph 66.

**PARAGRAPH 67:**

However, a few days later, despite expecting to earn in excess of $500,000 per year as an attending anesthesiologist, Chenchen reneged on the Loan Agreement and for the first time denied her obligation to repay any part of the loan.

**RESPONSE TO PARAGRAPH 67:**

Chenchen denies the allegations in Paragraph 67.

**PARAGRAPH 68:**

At no prior time had Chenchen ever denied the existence of the loan or her obligations under the Loan Agreement.

**RESPONSE TO PARAGRAPH 68:**

Chenchen denies the allegations in Paragraph 68.

**PARAGRAPH 69:**

Upon information and belief, Andrew had demanded that Chenchen speak with an attorney before repaying the loan because he believed that Chenchen's money belonged to him and that any money repaid to Jin and Helen would not be available to him and his family. Andrew previously referred to Chenchen (his own wife) as a "cash cow."

**RESPONSE TO PARAGRAPH 69:**

Chenchen states that, at some point, Andrew referred to her in obvious jest as a "cash cow." Chenchen states that that allegation is impertinent, irrelevant to the remaining allegations in Paragraph 69, and irrelevant to this litigation. Chenchen denies the remaining allegations in Paragraph 69.

**PARAGRAPH 70:**

Andrew's concern about money for his family and his and Chenchen's daughter is surprising, because unlike Jin and Helen when they were a young couple, Andrew and Chenchen are not living a meager lifestyle. Andrew is a principal of CC Capital, a private investment firm, located in New York City, and has bragged to Jin and Helen about earning in excess of one million dollars per year, asserting that he and Chenchen *each* fall within the top 1% of earners in the United States.

**RESPONSE TO PARAGRAPH 70:**

Chenchen admits that she and Andrew are not living a meager lifestyle and that Andrew is a principal of CC Capital, a private investment firm located in New York City. Chenchen denies the remaining allegations in Paragraph 70.

**PARAGRAPH 71:**

Upon information and belief, Andrew convinced Chenchen to speak with a friend of his who is an attorney.

**RESPONSE TO PARAGRAPH 71:**

Chenchen denies the allegations in Paragraph 71.

**PARAGRAPH 72:**

Upon information and belief, Andrew's friend told Chenchen (incorrectly) that the Loan Agreement is not enforceable because there was no written agreement and (also incorrectly) that the loan is considered a gift that Chenchen is not legally obligated to repay.

**RESPONSE TO PARAGRAPH 72:**

Chenchen denies the allegations in Paragraph 72.

**PARAGRAPH 73:**

Based on this "legal advice," on May 28, 2024, Chenchen told Helen over FaceTime that she now considered the money to be a gift that she was not obligated to repay. Chenchen then walked away from the phone leaving her mother devastated and in tears.

**RESPONSE TO PARAGRAPH 73:**

Chenchen denies the allegations in Paragraph 73.

**PARAGRAPH 74:**

Although Plaintiffs do not seek compensation for their parental duties, on countless occasions, Jin drove Chenchen between Connecticut and Durham (when Chenchen was attending Duke for undergraduate studies), Madison (where Chenchen's was working first job [sic]), and New Orleans (when Chenchen was attending Tulane for medical school). Despite this (and numerous other sacrifices over the years), on that May 28, 2024 call, Chenchen had the audacity to ask Jin what he had ever "contributed" to her education and claimed that her accomplishments were solely the result of her own hard work. This callous and immature statement hurt Jin deeply.

**RESPONSE TO PARAGRAPH 74:**

Chenchen denies the allegations in Paragraph 74.

**PARAGRAPH 75:**

Chenchen has not spoken to Jin and Helen since walking away from the FaceTime call on May 28, 2024, despite numerous attempts by her family to reach out to her. Jin and Helen have tried to resolve this dispute with Chenchen, both with and without the aid of family members and lawyers. Unfortunately, Chenchen ignored their outreach.

**RESPONSE TO PARAGRAPH 75:**

Chenchen denies the allegations in Paragraph 75.

**PARAGRAPH 76:**

Chenchen's sister Judy, who supports her parents despite making a far lower salary than Chenchen, tried to convince Chenchen to pay back the loan and has gone so far as to offer to help Chenchen pay it back. Chenchen refused this offer.

**RESPONSE TO PARAGRAPH 76:**

Chenchen denies the allegations in Paragraph 76.

**PARAGRAPH 77:**

In a last-ditch effort, Jin and Helen provided a draft version of this Complaint to Chenchen in the hopes that Chenchen would be agreeable to resolving this family dispute without the need to go to Court. She refused.

**RESPONSE TO PARAGRAPH 77:**

Chenchen admits that Jin and Helen's counsel e-mailed her counsel with a draft complaint and referenced in her e-mail "hopes that the parties could try to reach an amicable resolution

without going into a full-blown litigation." Chenchen states that her counsel responded that she and Andrew did not expect discussions of a possible resolution to be fruitful at that time. Chenchen denies the remaining allegations in Paragraph 77.

**PARAGRAPH 78:**

Chenchen's decision to breach the Loan Agreement and turn her back on her family has devastated Jin and Helen. After a lifetime of sacrifice to give their daughter the opportunity to achieve a level of comfort, security, and affluence they could only dream of, Chenchen has chosen to abandon them.

**RESPONSE TO PARAGRAPH 78:**

Chenchen denies the allegations in Paragraph 78.

**PARAGRAPH 79:**

Chenchen's breach of the Loan Agreement has also left Jin and Helen without sufficient assets to support Chenchen's grandparents in China, both of whom are elderly and depend upon their daughter to care for them. Helen's mother is 88 years old and has been bedridden for over four years. Helen's father (who raised Chenchen for the first four years of her life) is terminally ill with Stage 4 lung cancer and has incurred substantial medical expenses paid for by Jin and Helen.

**RESPONSE TO PARAGRAPH 79:**

Chenchen admits that Helen's parents are elderly and live in China, that Helen's mother is 88 years old and that Helen's father has Stage 4 lung cancer. Chenchen denies the remaining allegations in Paragraph 79.

**PARAGRAPH 80:**

Both Helen's parents rely on Helen and Jin to be secure in their final stage of life.

**RESPONSE TO PARAGRAPH 80:**

Chenchen lacks sufficient knowledge and information to either admit or deny the allegations in Paragraph 80.

**PARAGRAPH 81:**

In sharp contrast, Chenchen's breach of the Loan Agreement has left Jin and Helen without sufficient assets to fund their fast-approaching retirement and left them highly vulnerable during what should be their golden years.

**RESPONSE TO PARAGRAPH 81:**

Chenchen denies the allegations in Paragraph 81.

**PARAGRAPH 82:**

After so much sacrifice, the least Jin and Helen expected of Chenchen was for her to honor her financial obligations even if she lacks any sense of familial duty or communal responsibility.

**RESPONSE TO PARAGRAPH 82:**

Chenchen denies the allegations in Paragraph 82.

**PARAGRAPH 83:**

Chenchen's heartless and disgraceful behavior is not only a breach of the Loan Agreement. It is a slap in the face to every immigrant who makes incalculable psychological, emotional and financial sacrifices so that their children do not have to.

**RESPONSE TO PARAGRAPH 83:**

The allegations in the first sentence of Paragraph 83 constitute Jin and Helen's legal conclusions, to which no response is required. To the extent a response is required, Chenchen denies the allegations in the first sentence of Paragraph 83. Chenchen denies the remaining allegations in Paragraph 83.

**PARAGRAPH 84:**

Chenchen's breach of the Loan Agreement has left Jin and Helen desperate, heartbroken, and forced to resort to the legal system to have any chance at a secure future. Through this action, Jin and Helen seek to enforce the terms of their Loan Agreement with Chenchen. Alternatively, Jin and Helen seek to recover under the equitable theories of unjust enrichment and promissory estoppel.

**RESPONSE TO PARAGRAPH 84:**

Paragraph 84 includes Jin and Helen's legal conclusions, to which no response is required. To the extent a response is required, Chenchen denies those allegations. Chenchen denies the remaining allegations in Paragraph 84.

**COUNT I: BREACH OF CONTRACT**

**PARAGRAPH 85:**

Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

**RESPONSE TO PARAGRAPH 85:**

Chenchen repeats and realleges the responses to the allegations contained in Paragraphs 1 through 84 as if fully set forth herein.

**PARAGRAPH 86:**

Chenchen is liable to her parents, Jin and Helen, for breach of contract.

**RESPONSE TO PARAGRAPH 86:**

The allegations in Paragraph 86 contain Jin and Helen's legal conclusions, to which no response is required. To the extent a response is required, Chenchen denies the allegations in Paragraph 86.

**PARAGRAPH 87:**

In May 2016, at their family home in Westport, Connecticut, Chenchen and Plaintiffs entered into the Loan Agreement.

**RESPONSE TO PARAGRAPH 87:**

Chenchen denies the allegations in Paragraph 87.

**PARAGRAPH 88:**

Plaintiffs offered to loan Chenchen the full amount of her medical school tuition and living expenses.

**RESPONSE TO PARAGRAPH 88:**

Chenchen denies the allegations in Paragraph 88.

**PARAGRAPH 89:**

In response, Chenchen represented that she would repay the full amount of the loan and that she would commence payments upon beginning work as an attending physician following completion of her residency program.

**RESPONSE TO PARAGRAPH 89:**

Chenchen denies the allegations in Paragraph 89.

**PARAGRAPH 90:**

In reliance upon Chenchen's representations, Plaintiffs agreed to the terms of the Loan Agreement.

**RESPONSE TO PARAGRAPH 90:**

Chenchen denies the allegations in Paragraph 90.

**PARAGRAPH 91:**

In reliance upon Chenchen's representations, Plaintiffs took out a $320,000 home equity line of credit from US Bank secured by their family home at a fixed interest rate of 2.875%, borrowed $200,000 from Helen's sister at an interest rate of 2%, and stopped contributing to their retirement funds.

**RESPONSE TO PARAGRAPH 91:**

Chenchen denies the allegations in Paragraph 91.

**PARAGRAPH 92:**

In reliance upon Chenchen's representations that she would repay the loan, Plaintiffs transferred to Chenchen, or otherwise paid on her behalf, a total sum of $437,233 to pay her medical school tuition and living expenses. This amount does not account for the interest that Plaintiffs paid to obtain the funds loaned to Chenchen.

**RESPONSE TO PARAGRAPH 92:**

Chenchen denies the allegations in Paragraph 92.

**PARAGRAPH 93:**

Jin and Helen fully performed their obligations under the Loan Agreement.

**RESPONSE TO PARAGRAPH 93:**

The allegations in Paragraph 93 contain Jin and Helen's legal conclusions, to which no response is required. To the extent a response is required, Chenchen denies the allegations in Paragraph 93.

**PARAGRAPH 94:**

On numerous occasions between 2016 and 2024, and as recently as May 26, 2024, Chenchen reaffirmed and acknowledged her obligations under the Loan Agreement and agreed to repay the loan.

**RESPONSE TO PARAGRAPH 94:**

Chenchen denies the allegations in Paragraph 94.

**PARAGRAPH 95:**

At all times Chenchen knew that the loan was not a gift because she knew that Plaintiffs could not afford to pay for her medical school tuition and, for that reason, Plaintiffs borrowed the funds from their mortgage lender and Helen's sister.

**RESPONSE TO PARAGRAPH 95:**

Chenchen denies the allegations in Paragraph 95.

**PARAGRAPH 96:**

Nonetheless, on May 28, 2024, Chenchen told Helen for the first time that she considered the loan to be a "gift" and that she was under no obligation to repay any of the loan amount.

**RESPONSE TO PARAGRAPH 96:**

Chenchen denies the allegations in Paragraph 96.

**PARAGRAPH 97:**

Chenchen became an attending anesthesiologist at White Plains Hospital in or around September 2024, making over half a million per year, but refused to repay any of the loan notwithstanding her obligation to do so under the terms of the Loan Agreement.

**RESPONSE TO PARAGRAPH 97:**

Chenchen admits that she became an attending anesthesiologist at White Plains Hospital in or around September 2024. Chenchen denies the remaining allegations in Paragraph 97.

**PARAGRAPH 98:**

Accordingly, Chenchen is in breach of the Loan Agreement.

**RESPONSE TO PARAGRAPH 98:**

The allegations in Paragraph 98 contain Jin and Helen's legal conclusions, to which no response is required. To the extent a response is required, Chenchen denies the allegations in Paragraph 98.

**PARAGRAPH 99:**

As a result of Chenchen's breach of the Loan Agreement, Plaintiffs have been damaged in an amount to be determined at trial, which shall in no event be less than the amount loaned of $437,233, plus interest, plus attorneys' fees. This balance will continue to grow with interest with each passing day until it is paid.

**RESPONSE TO PARAGRAPH 99:**

The allegations in Paragraph 99 contain Jin and Helen's legal conclusions, to which no response is required. To the extent a response is required, Chenchen denies the allegations in Paragraph 99.

**COUNT II: UNJUST ENRICHMENT**

**PARAGRAPH 100:**

Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

**RESPONSE TO PARAGRAPH 100:**

Chenchen repeats and realleges the responses to the allegations contained in Paragraphs 1 through 99 as if fully set forth herein.

**PARAGRAPH 101:**

In the alternative to breach of contract, Chenchen is liable to Jin and Helen for unjust enrichment.

**RESPONSE TO PARAGRAPH 101:**

The allegations in Paragraph 101 contain Jin and Helen's legal conclusions, to which no response is required. To the extent a response is required, Chenchen denies the allegations in Paragraph 101.

**PARAGRAPH 102:**

Plaintiffs could not afford to pay for Chenchen's medical school tuition and expenses. To help Chenchen, Plaintiffs agreed to loan her $437,233 towards medical school tuition and living expenses.

**RESPONSE TO PARAGRAPH 102:**

Chenchen denies the allegations in Paragraph 102.

**PARAGRAPH 103:**

Chenchen benefited from this loan because it allowed her to graduate from medical school and, ultimately, earn a lucrative salary as an attending anesthesiologist giving her, her husband and her daughter substantial financial security.

**RESPONSE TO PARAGRAPH 103:**

Chenchen denies the allegations in Paragraph 103.

**PARAGRAPH 104:**

Chenchen also benefited from this loan because it allowed her to pay her medical school tuition and expenses at a lower rate of interest than the prevailing interest rate charged for student loans.

**RESPONSE TO PARAGRAPH 104:**

Chenchen denies the allegations in Paragraph 104.

**PARAGRAPH 105:**

Chenchen expressly and unequivocally agreed to repay the loan to the Plaintiffs in May 2016, repeatedly between 2016 and 2024, and as recently as May 26, 2024.

**RESPONSE TO PARAGRAPH 105:**

Chenchen denies the allegations in Paragraph 105.

**PARAGRAPH 106:**

Nonetheless, Chenchen now refuses to repay Plaintiffs for the benefit they conferred upon her and has therefore been unjustly enriched in the amount of at least half a million dollars, equal to the principal amount loaned of $437,233 plus interest.

**RESPONSE TO PARAGRAPH 106:**

The allegations in Paragraph 106 contain Jin and Helen's legal conclusions, to which no response is required. To the extent a response is required, Chenchen denies the allegations in Paragraph 106.

**PARAGRAPH 107:**

Chenchen's unjust failure to repay Plaintiffs has been detrimental to Plaintiffs in that it has harmed Plaintiffs' ability to care for Helen's ailing parents and depleted Plaintiffs' retirement savings right before Plaintiffs plan to retire.

**RESPONSE TO PARAGRAPH 107:**

Chenchen denies the allegations in Paragraph 107.

**PARAGRAPH 108:**

It is contrary to equity and good conscience for Chenchen to retain the financial benefit that has come to her at the expense of the Plaintiffs. Chenchen used the Plaintiffs' loan to secure an affluent future for herself while leaving the Plaintiffs financially insecure at a vulnerable time in their life despite decades of hard work and sacrifice for their daughter.

**RESPONSE TO PARAGRAPH 108:**

The allegations in the first sentence of Paragraph 108 contain Jin and Helen's legal conclusions, to which no response is required. To the extent a response is required, Chenchen denies the allegations in the first sentence of Paragraph 108. Chenchen denies the remaining allegations in Paragraph 108.

**PARAGRAPH 109:**

Accordingly, Chenchen should be required to remit payment to Plaintiffs of an amount to be determined at trial, which shall in no event be less than the amount loaned of $437,233, plus interest, plus attorneys' fees. This balance will continue to grow with interest with each passing day until it is paid.

**RESPONSE TO PARAGRAPH 109:**

The allegations in Paragraph 109 contain Jin and Helen's legal conclusions, to which no response is required. To the extent a response is required, Chenchen denies the allegations in Paragraph 109.

**COUNT III: PROMISSORY ESTOPPEL**

**PARAGRAPH 110:**

Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

**RESPONSE TO PARAGRAPH 110:**

Chenchen repeats and realleges the responses to the allegations contained in Paragraphs 1 through 109 as if fully set forth herein.

**PARAGRAPH 111:**

In the alternative, Chenchen is liable to the Plaintiffs for promissory estoppel.

**RESPONSE TO PARAGRAPH 111:**

The allegations in Paragraph 111 contain Jin and Helen's legal conclusions, to which no response is required. To the extent a response is required, Chenchen denies the allegations in Paragraph 111.

**PARAGRAPH 112:**

In or around May 2016, Plaintiffs offered to loan Chenchen $437,233 to pay for medical school tuition and expenses so long as Chenchen promised to repay the loan when she became a full-time attending physician.

**RESPONSE TO PARAGRAPH 112:**

Chenchen denies the allegations in Paragraph 112.

**PARAGRAPH 113:**

Chenchen made a clear and definite promise to repay Plaintiffs the full amount of the loan when she became a full-time attending physician.

**RESPONSE TO PARAGRAPH 113:**

Chenchen denies the allegations in Paragraph 113.

**PARAGRAPH 114:**

Chenchen reasonably expected her promise of repayment to induce Plaintiffs to loan her $437,233 to pay for medical school tuition and expenses.

**RESPONSE TO PARAGRAPH 114:**

Chenchen denies the allegations in Paragraph 114.

**PARAGRAPH 115:**

Plaintiffs relied on Chenchen's promise of repayment when they decided to borrow additional money against the family home, borrow money from Helen's sister at a rate of 2% interest, and to stop contributing to their retirement accounts.

**RESPONSE TO PARAGRAPH 115:**

Chenchen denies the allegations in Paragraph 115.

**PARAGRAPH 116:**

Plaintiffs relied on Chenchen's promise of repayment when they transferred, or otherwise paid on her behalf, $437,233 to pay for medical school tuition and expenses.

**RESPONSE TO PARAGRAPH 116:**

Chenchen denies the allegations in Paragraph 116.

**PARAGRAPH 117:**

Plaintiffs' reliance on Chenchen's promise of repayment was reasonable because she had always been a kind and gracious daughter who understood the decades of sacrifice Plaintiffs made on her behalf.

**RESPONSE TO PARAGRAPH 117:**

Chenchen denies the allegations in Paragraph 117.

**PARAGRAPH 118:**

Chenchen's promise of repayment induced Plaintiffs to loan Chenchen $437,233 to pay for medical school tuition and expenses.

**RESPONSE TO PARAGRAPH 118:**

Chenchen denies the allegations in Paragraph 118.

**PARAGRAPH 119:**

Plaintiffs incurred a detriment as a result of relying on Chenchen's promise because they now lack sufficient funds to care for Helen's ailing parents or to retire securely. Helen is also being forced to retire from her job in or around June 2025 so that she can return to China to care for her aging and sick parents. As a result, she will lose the income she currently relies upon to pay for her parents' medical expenses in China.

**RESPONSE TO PARAGRAPH 119:**

Chenchen denies the allegations in Paragraph 119.

**PARAGRAPH 120:**

Chenchen's promise of repayment must be enforced to prevent an unjust outcome. Chenchen induced Plaintiffs to loan her money that allowed her to secure an affluent future for

herself. If that promise is not enforced, Plaintiffs will be left without the means to retire securely or care for Helen's ailing parents.

**RESPONSE TO PARAGRAPH 120:**

The allegations in Paragraph 120 contain Jin and Helen's legal conclusions, to which no response is required. To the extent a response is required, Chenchen denies the allegations in Paragraph 120.

**PARAGRAPH 121:**

Accordingly, Plaintiffs are entitled to damages in an amount to be determined at trial, which shall in no event be less than the amount loaned of $437,233 plus interest, plus attorneys' fees.

**RESPONSE TO PARAGRAPH 121:**

The allegations in Paragraph 121 contain Jin and Helen's legal conclusions, to which no response is required. To the extent a response is required, Chenchen denies the allegations in Paragraph 121.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully requests relief and judgment against Defendant as follows:

(A) In connection with Count I for Breach of Contract, awarding Plaintiffs monetary damages against Defendant in an amount to be determined at trial but shall in no event less than $437,233 plus interest plus attorneys' fees;

(B) In connection with Count II for Unjust Enrichment, awarding Plaintiffs monetary damages against Defendant in an amount to be determined at trial, but shall in no event less than $437,233 plus interest plus attorneys' fees;

(C) In connection with Count III for Promissory Estoppel, awarding Plaintiffs monetary damages against Defendant in an amount to be determined at trial, but shall in no event less than $437,233 plus interest plus attorneys' fees;

(D) For pre-judgment and post-judgment interest at the maximum rate permitted by law;

(E) For Plaintiffs' attorneys' fees and costs of collection;

(F) For such other, different, and further relief as may be just and proper.

**RESPONSE TO PRAYER FOR RELIEF:**

The prayer for relief on pages 18-19 of the complaint sets forth Jin and Helen's requested relief, to which no response is required. To the extent a response is required, Chenchen denies that Jin and Helen are entitled to the requested relief — or any relief.

**DEMAND FOR A JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.

**RESPONSE TO DEMAND FOR A JURY TRIAL:**

No response is required to Jin and Helen's demand for a jury trial. To the extent a response is required, Chenchen responds that while Jin and Helen may have a right to a jury trial on their legal claim for breach of contract (which, among other defects, is patently barred by the statute of frauds), they have no right to a jury trial on their equitable claims of unjust enrichment or promissory estoppel.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiffs' complaint fails to state a claim upon which relief can be granted, and therefore should be dismissed.

### Second Affirmative Defense

Plaintiffs' claims are barred in whole or in part by the statute of frauds.

### Third Affirmative Defense

Plaintiffs' claims are barred in whole or in part by the doctrine of estoppel.

### Fourth Affirmative Defense

Plaintiffs' claims are barred in whole or in part by the doctrine of release.

**Fifth Affirmative Defense**

Plaintiffs' claims are barred in whole or in part by the doctrine of waiver.

**Sixth Affirmative Defense**

Plaintiffs' claims are barred in whole or in part by the doctrine of acquiescence.

**Seventh Affirmative Defense**

Plaintiffs' claims are barred in whole or in part by the doctrine of laches.

**Eighth Affirmative Defense**

Plaintiffs' claims are barred in whole or in part by the doctrine of unclean hands.

**Ninth Affirmative Defense**

Plaintiffs' claims are barred in whole or in part by Plaintiffs' inequitable conduct.

**Tenth Affirmative Defense**

Plaintiffs' claims are barred in whole or in part by the doctrine of setoff.

**Eleventh Affirmative Defense**

Plaintiffs' claims are barred in whole or in part because plaintiffs have suffered no injury.

**Twelfth Affirmative Defense**

Plaintiffs are not entitled to any equitable relief because, to the extent plaintiffs have suffered any injury (which Chenchen denies), plaintiffs have an adequate remedy at law.

**Thirteenth Affirmative Defense**

Plaintiffs fail to state either facts or a legal claim sufficient to permit recovery of attorneys' fees.

**Fourteenth Affirmative Defense**

Plaintiffs' claims are barred in whole or in part because award of the judgment sought by plaintiffs would unjustly enrich them.

**Reservation of Rights**

Chenchen reserves the right to amend this answer and to assert additional defenses, including affirmative defenses, following further investigation or discovery. By setting forth the foregoing affirmative defenses, Chenchen does not assume the burden of proof on any defense where such burden would otherwise rest with plaintiffs.

Dated: April 28, 2025

By: /s/ *Michael A. Charish*
Michael A. Charish
CHARISH LAW GROUP P.C.
347 Fifth Avenue, Suite 1402
New York, New York 10016
(646) 328-0183
michael@charish.law

*Attorneys for Defendant Chenchen Feng*