# EXHIBIT 2

## FACSIMILE TRANSMITTAL SHEET

| TO: | FROM: |
|---|---|
| Honorable Nelson S. Román | Michael A. Charish |

| COMPANY: | DATE: |
|---|---|
| United States District Court, for the Southern District of New York | 6/30/2025 |

| FAX NUMBER: | SENDER'S PHONE NUMBER: |
|---|---|
| (914) 390-4179 | (646) 328-0183 |

| PHONE NUMBER: | SENDER'S FAX NUMBER: |
|---|---|
| (914) 390-4177 | (646) 915-1667 |

| RE: | TOTAL NO. OF PAGES, INCLUDING COVER: |
|---|---|
| *Feng et. al. v. Feng,* **Civil Case No. 7:25-cv-2396 (NSR)** | 4 |

☐ URGENT   ☐ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY   ☐ PLEASE RECYCLE

NOTES/COMMENTS:

Please see the attached letter requesting a pre-motion conference.

Respectfully submitted,

Michael A. Charish

# CHARISH LAW GROUP P.C.

347 FIFTH AVENUE, SUITE 1402, NEW YORK, NEW YORK 10016
E-MAIL: OFFICE@CHARISH.LAW  TELEPHONE: (646) 328-0185

___

**MICHAEL A. CHARISH**
DIRECT DIAL: (646) 328-0183
E-MAIL: michael@charish.law

June 30, 2025

**Via Fax**

Honorable Nelson S. Román
United States District Judge
United States District Court
  for the Southern District of New York
United States Courthouse
300 Quarropas Street
Courtroom 218
White Plains, New York 10601

    Re:    *Feng et al. v. Feng*, No. 7:25-cv-2396 (NSR)

Dear Judge Román:

    I represent defendant Chenchen Feng ("Chenchen") in this action. Chenchen seeks leave to file a motion for sanctions, and, pursuant to Rule 3.A.ii. of the Court's Individual Practices in Civil Cases, I write to respectfully request a pre-motion conference with the Court. Chenchen's parents, plaintiffs Jin Feng and Yang ("Helen") Wang (together, "Plaintiffs"), have sued Chenchen for not repaying money they spent on Chenchen's medical-school tuition and living expenses. But Plaintiffs' core allegations are intentionally and demonstrably false. Their complaint (ECF No. 1) violates: Federal Rule of Civil Procedure 11(b)(3), because its factual contentions not only lack evidentiary support, the evidence negates them; and Rule 11(b)(1), because they filed the complaint for the improper purpose of harassing Chenchen. Plaintiffs' primary prevarications divide into four main categories.

    *First*, the complaint falsely alleges that in May 2016, Plaintiffs offered to loan Chenchen her medical-school tuition and living expenses in exchange for Chenchen's agreement to repay that loan when she became an attending physician. *See, e.g.*, Complaint ¶ 46. The Complaint does not attach, quote, or even refer to any evidentiary support — contemporaneous or non-contemporaneous — of this supposed loan, or any promise to repay.

    During a June 3, 2024 recorded telephone conversation, Mr. Feng admitted to Chenchen that there was no loan. Rather, Plaintiffs' medical-school-tuition payments were a gift they gave Chenchen "for free. It's what we're willing to do, because we love you." When Chenchen repeated that her medical-school education "*was a gift*," Mr. Feng confirmed: "*Yes*" (emphasis added). Mr. Feng's dispositive admissions are consistent with an October 31, 2024 e-mail from Ms. Wang. Ms. Wang wrote that she expected repayment from Chenchen (in gifts, not cash) —

Honorable Nelson S. Román
June 30, 2025
Page 2 of 3

not because of an alleged loan agreement — but because repayment would be "consistent with both American cultural norms and Chinese values."

*Second*, Plaintiffs falsely claim that they paid Chenchen's full medical-tuition and living expenses, totaling $437,233.  *See*, *e.g.*, Complaint ¶¶ 53, 92, 112, 118.  But during Mr. Feng's June 3, 2024 call with Chenchen, he admitted:  "*Grandpa and Grandma paid for your tuition — we won't even mention that*" (emphasis added).  Contemporaneous text messages between Chenchen and her grandparents, including a November 19, 2018 exchange, confirm that admission.  When Chenchen wrote, "I know that most of the tuition fee is paid by Grandpa and Grandma," her grandfather replied, "Grandma just wants you to study in peace and not worry about tuition ... We don't need [the money] either."

*Third*, Plaintiffs falsely allege that in "reliance upon Chenchen's promise" in 2016 to repay the alleged loan, Plaintiffs "obtained $320,000 by refinancing their mortgage" and "borrowed another $200,000 from [Ms. Wang's] sister."  *See*, *e.g.*, Complaint ¶¶ 50, 51, 91, 115.  But public records reveal that Plaintiffs refinanced their mortgage *four years earlier*, in 2012.  And text messages from Ms. Wang in 2023 and 2024 admit that Plaintiffs borrowed money from Ms. Wang's sister — also years earlier — to help pay for Chenchen and her sister Judy's undergraduate education — not for Chenchen's medical school, and not in reliance on any purported promise by Chenchen.

*Fourth*, Plaintiffs falsely allege that they could not afford to pay for Chenchen to go to medical school and that Chenchen's refusal to repay their alleged loan has left them financially "insecure," "highly vulnerable," and "desperate."  *See*, *e.g.*, Complaint ¶¶ 44, 81, 84, 108.  But public records and text messages show that Plaintiffs are multi-millionaires who: have sold at least four investment properties (in China, Connecticut, and Riverside Boulevard in Manhattan); live in a multi-million-dollar home in Westport; have large retirement accounts; and receive (or expect to receive) ample social-security and pension payments as well.  As Ms. Wang wrote in a June 1, 2023 text message:  "*I can afford anything I want*" (emphasis added).

The evidence completely undermines Plaintiffs' claims and also exposes Plaintiffs' true, improper motives — to harass and shame Chenchen for doing something they consider to be culturally taboo: signing a prenuptial agreement with her husband without their consent.  As Ms. Wang threatened during the June 3, 2024 call:  "I'm gonna spend every single penny to sue you, hire attorney to sue you. I'm gonna [unintelligible] every day. You made me lose face."

On June 4, 2025, I sent Plaintiffs' counsel a 10-page, Rule 11 safe-harbor letter and notice of motion, attaching evidence (including the evidence referred to here) proving that the complaint's core allegations have no evidentiary support and are false.  The letter gave Plaintiffs an opportunity to voluntarily dismiss their complaint with prejudice.

Plaintiffs' counsel responded by letter on June 16, 2025, understatedly conceding "some factual inaccuracies" in the complaint.  Counsel effectively admitted that Plaintiffs' mortgage refinancing and loan from Ms. Wang's sister occurred before Chenchen was even accepted to medical school in 2016.  Moreover, in glaring contrast to the complaint, counsel suggested that Chenchen's alleged "debt" to her parents is based — not on an oral loan agreement or promise to

Honorable Nelson S. Román
June 30, 2025
Page 3 of 3

pay them hundreds of thousands of dollars in cash — but rather on an alleged offer to "repay Plaintiffs" by buying them health insurance "a new car, a boat, and/or a vacation." Yet counsel stated that Plaintiffs will not voluntarily dismiss their complaint and will oppose any Rule 11 motion Chenchen files.

The Court should grant Chenchen leave to file a sanctions motion. A pleading violates Rule 11 if it is "frivolous, legally unreasonable, or factually without foundation, even though not signed in subjective bad faith." *Wechsler v. Hunt Health Sys., Ltd.* 216 F. Supp. 2d 347, 356 (S.D.N.Y. 2002). Sanctions are appropriate where facts have been "concocted." *Colliton v. Cravath, Swaine & Moore LLP*, 2008 WL 4386764, at *13 (S.D.N.Y Sept. 24, 2008), *aff'd*, 356 F. App'x 535 (2d Cir. 2009). "If ... the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." *Hutter v. Countrywide Bank, N.A.*, 41 F. Supp.3d 363, 387 (S.D.N.Y. 2014) (Román, J.) (imposing sanctions where allegations in pleading were contradicted by parties' admissions), *aff'd in part, vacated in part, remanded*, 710 F. App'x 25 (2d Cir. 2018). Moreover, the Court possesses inherent power to impose sanctions for claims that lack a colorable basis and have been asserted for "improper purposes such as harassment …." *See*, *e.g. Emmon v. Prospect Capital Corp.*, 675 F.3d 138, 143 (2d Cir. 2012).

This is the rare case in which sanctions are warranted. Plaintiffs concocted blatantly false allegations and claims to harass their daughter. Plaintiffs' counsel signed and filed a complaint that does not cite one iota of documentary evidence. Rule 11 "imposes on attorneys the affirmative duty to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Hutter*, 41 F. Supp.3d at 387. Especially in the absence of any corroborating evidence for Plaintiffs' claims, counsel should have conducted a reasonable inquiry to verify them, and that inquiry would have revealed, at the least, that Plaintiffs' factual contentions lack evidentiary support.

Plaintiffs invented facts to support false claims that are not easily subject to a motion to dismiss on the face of their complaint. But the fact that Chenchen did not move to dismiss, or file a pre-discovery summary-judgment motion, cannot shield Plaintiffs and their counsel from sanctions. As this Court has held: "The imposition of sanctions is collateral to and independent from the underlying case such that the district court has jurisdiction to impose sanctions, if warranted, irrespective of the status of the underlying claims or case." *Phillips v. Delaney*, 2020 WL 5898972, at *4 (S.D.N.Y. Oct. 2, 2020) (Román, J.).

Chenchen respectfully requests that the Court schedule a pre-motion conference and, at the conference (if not before), grant her leave to file a motion for sanctions in which she will present to the Court the evidence demonstrating that Plaintiffs' case is frivolous.

Respectfully submitted,

*/s/ Michael A. Charish*
Michael A. Charish

cc (via e-mail):   Melissa Yang, Esq.