# Exhibit 1

## FAX COVER SHEET

| | |
|---|---|
| TO | Judge Roman |
| COMPANY | |
| FAX NUMBER | 19143904179 |
| FROM | Melissa Yang |
| DATE | 2025-07-03 16:55:42 GMT |
| RE | Jin Feng, et al. v. Chenchen Feng, Case No. 25-CV-02396(NSR) |

## COVER MESSAGE

Please find enclosed a letter responding to defendant Chenchen Feng's letter requesting a pre-motion conference.

# MELISSA YANG PLLC

136 MADISON AVE. 6ᵀᴴ FL.
NEW YORK, N.Y. 10016
(646) 516-9529
WWW.MELISSAYANGPLLC.COM

July 3, 2025

**<u>VIA FASCIMILE (914-390-4179)</u>**
The Honorable Nelson S. Román
United States District Court,
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

       Re:    ***<u>Jin Feng, et al. v. Chenchen Feng</u>*, Case No. 25-CV-02396(NSR)**

Dear Judge Román:

      Per Section 3.A.ii of Your Honor's Individual Practices in Civil Cases, we write on behalf of plaintiffs Jin Feng ("Jin") and Yang Wang ("Helen," together with Jin, the "Plaintiffs") to oppose defendant Chenchen Feng ("Chenchen")'s letter motion, dated June 30, 2025, seeking a pre-motion conference for leave to file a motion for sanctions against Plaintiff and their counsel under Fed. R. Civ. P. 11 (the "Letter Motion"). In the Letter Motion, Chenchen takes the position that Plaintiffs' Complaint (ECF No. 1) violates: (a) Fed. R. Civ. P. 11(b)(3) because the factual contentions lack evidentiary support and are allegedly refuted by the "evidence" cited therein; and (b) Fed. R. Civ. P. 11(b)(1) because Plaintiffs filed the Complaint to harass her. As detailed herein, any motion for sanctions is itself frivolous – and sanctionable under Rule 11 – as it is merely a tool used by Chenchen as part of her ongoing war of attrition to intimidate and overburden her parents with unnecessary motion practice and to drive up their costs, hoping they would be pressured into abandoning their legitimate claims.[1]

      This action arises out of an unfortunate family dispute between Plaintiffs and their daughter, Chenchen, who refuses to repay amounts loaned to her for her medical school tuition and living expenses. (*See generally* ECF No. 1.) Plaintiffs seek to recover these amounts from Chenchen through their claims for breach of contract, unjust enrichment, and promissory estoppel. (*Id.*) Chenchen contends she is not liable because the amounts paid were a "gift" and that Plaintiffs concocted a theory of a loan to "harass" and "shame" her because they are upset that she entered into a prenuptial agreement with her husband without their consent. (Letter Motion at 1, 3.)

      Chenchen's entire theory – that her parents fabricated a loan and sued her as a form of harassment for entering into a prenuptial agreement without their consent – makes no sense based on the timeline of events. Plaintiffs first learned of Chenchen's prenuptial agreement in March 2024 through Judy, their younger daughter. Yet, Plaintiffs did not "harass" or "shame" Chenchen after this discovery; to the contrary, they continued to care for her, including bringing food down

---

[1] Plaintiffs intend to hold Chenchen and her counsel responsible under Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 if they decide to file and pursue a baseless motion for sanctions premised upon the false theory that no loan existed.

from Connecticut to New York City for Chenchen while she was pregnant and taking care of her and her newborn daughter for one month between April and May 2024 during postpartum confinement.  (ECF No. 1 ¶ 64; *see* ECF No. 9 ¶ 64 (admitting she spent the first four weeks in Plaintiffs' home after giving birth to her daughter on April 28, 2024).)  Plaintiffs' relationship with Chenchen deteriorated *after* Chenchen moved out and asserted *for the first time* that the payments made were a "gift" and that she need not make repayment. (*See* ECF No. 1 ¶¶ 65–68.)

While Chenchen disputes the existence of a verbal loan agreement, she concedes that the Complaint contains sufficient factual allegations that will withstand a motion to dismiss (Letter Motion at 4) and she filed an Answer (ECF No. 9).[2]  Nevertheless, Chenchen takes issue with Plaintiffs not citing "one iota of documentary evidence" in their Complaint, without citing any authority imposing such a requirement on Plaintiffs.  (Letter Motion at 1, 4.)  The parties just commenced discovery, and Plaintiffs are confident that the existence of the parties' verbal loan agreement will be confirmed in discovery and at trial, which will include testimony from a third party who was present for conversations where Plaintiffs reminded Chenchen of her obligation to repay the costs of her medical school tuition and expenses.  These conversations occurred when Chenchen was in medical school as well as when she was a resident.  This third party will also testify that no one referred to Chenchen's medical school tuition or expenses as a "gift" until Chenchen made that assertion days after Plaintiffs asked her to start repayment.  Further, Chenchen's own statements, where she promises to buy a luxury car, a boat, and vacations for Plaintiffs, only confirm that Chenchen also did not view Plaintiffs' payments to be a gift.  *Cf. Evangelical Alliance Mission/Nihon Domei Kirisuto Kyodan v. Lockman Found.*, No. 95 CIV 7214(SHS), 1995 WL 688958, at *3 (S.D.N.Y. Nov. 21, 1995) (stating arbitrators found defendant's support to be in the nature of a gift and defendant expected nothing in return).

Recognizing she has no legal basis to dismiss Plaintiffs' claims through a motion to dismiss (which is now waived) or a motion for summary judgment, Chenchen resorts to intimidation, hoping to scare her own parents into voluntarily dropping their claims.  They will not.  In her Letter Motion, Chenchen selectively cites documents and excerpts of conversations taken out of context to falsely portray Plaintiffs' allegations as baseless and this action as a form of harassment.  For example, on June 3, 2024, days after she refused to repay Plaintiffs (ECF No. 1 ¶ 73), Chenchen secretly recorded a conversation with Jin where she tried to entrap him into agreeing that the amounts loaned to her were a gift.  English is not Jin's primary language, and the audio recording (once it has been produced in discovery) will show that Chenchen deliberately tried to insert "gift" into the conversation so as to make it appear that Jin agreed with her.  But the recording will show, and Jin will also testify, that his answer of "Yes" was not in response to Chenchen's statement that the amounts paid were a "gift."  Chenchen also falsely claims that her grandparents paid a portion of her medical school tuition, relying on a conversation with Jin and a text message with her grandfather.  (Letter Motion at 2.)  Yet, Chenchen is aware that her grandfather (Helen's father)

---

[2] Courts have found verbal agreements to be enforceable under New York and Connecticut law.  *See, e.g., Rosbach v. Industry Trading Co., Inc.*, 81 F. Supp.2d 522, 526 (S.D.N.Y. 2000) (holding statute of frauds did not preclude enforcement of an oral loan without specified maturity date because loan could have been repaid within a year); *Patrowicz v. Peloquin*, 190 Conn. App. 124, 139 (Conn. App. Ct. 2019) (concluding plaintiffs rendered full performance of verbal agreement by providing eighteen distinct loans to defendant based on promise of repayment and that doctrine of partial performance precludes application of statute of frauds in this action).

wanted to send a portion of the proceeds of the sale of his apartment in China to Helen and Helen's sister. However, money transfers out of China are subject to restrictions, and, because payment of tuition is a permissible basis for a transfer, Helen directed her father (Chenchen's grandfather) to transfer *Helen's share* of the apartment proceeds to Chenchen's medical school tuition. To the extent Chenchen did not know about this arrangement while she was in medical school, she certainly knows about it now because Chenchen's grandfather recently messaged her that the amounts paid by him towards her tuition were made on Helen's behalf and that he did not have the means to help her with her tuition. Despite being corrected, Chenchen continues to advance this falsehood to the Court. (Letter Motion at 2.)

Further, Chenchen tries to paint a false picture of Plaintiffs as multimillionaires who have multiple investment properties that they purchased and sold over the years. The purchase price and sale of real property does not show the loans taken out to pay for the same or the extent of Plaintiffs' debt, and regardless, the size of Plaintiffs' finances are not relevant to the question of whether Chenchen should be required to uphold her side of the bargain and repay her parents for the amounts loaned to her. Notwithstanding, Plaintiffs are not rich. If they were, they would not have had to refinance their home in 2012 to free up funds before their daughters went away for college. Nor would they have had to obtain a loan from Helen's sister in 2012. In 2016, Helen extended the maturity date of that loan from 2017 to 2020, recognizing that she would be loaning funds to Chenchen who started medical school in 2016.

At bottom, Chenchen's threatened Rule 11 motion is not grounded in any legitimate basis of misconduct. At best, it is based on sharply disputed facts before the parties have meaningfully engaged in *any* discovery. *Cf.* Fed. R. Civ. P. 11(b)(3) (stating an attorney's signature to a pleading certifies that the factual contentions have evidentiary support or "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."); *Burns v. Bank of America*, No. 03-CV-1685(RMB)(JCF), 2007 WL 1589437, at *10 (S.D.N.Y. June 4, 2007) (describing sanctions motion as premature because discovery is ongoing and alleged improper conduct involves complicated questions of fact and law). As made clear by her approach to this litigation – including serving 105 requests for admission and 100 document demands that seek discovery into *inter alia* matters that occurred years prior to the parties' loan agreement in 2016 and companies to which Plaintiffs have no ownership interest – Chenchen is merely playing a game of attrition, recognizing that she and her husband earn multiples of Plaintiffs' salary and that she can outlast Plaintiffs if she makes it expensive enough for them to pursue the amounts rightfully owed to them in this lawsuit. If the Court grants leave for Chenchen to file a motion for sanctions (which it should not), Plaintiffs intend to seek repayment of their attorneys' fees and expenses against Chenchen (and her counsel) for making a plainly baseless and abusive motion based on a fabricated story of a gift. *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008) (stating sanctions motion is itself subject to Rule 11 and that court may issue sanctions against movant for filing a frivolous motion).

Respectfully submitted,

Melissa Yang

cc:    Michael Charish, Esq. (via email)